O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE MELGOZA,<br><br>Plaintiff,<br><br>v.<br><br>ALEJANDRO MAYORKAS, Secretary, United States Department of Homeland Security,<br><br>Defendant. | Case No.: 2:21-cv-08797-MEMF (PDx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [ECF NO. 16]; and DEFENDANT'S REQUEST FOR JUDICIAL NOTICE [ECF NO. 16-1]** |

Before the Court is Defendant Alejandro Mayorkas' Motion to Dismiss and Request for Judicial Notice. On May 26, 2022, the Court heard oral argument on the Motion.

For the reasons stated herein, the Court GRANTS the Motion to Dismiss (ECF No. 16) with leave to amend; and GRANTS the Request for Judicial Notice (ECF No. 16-1). Plaintiff Jacqueline Melgoza is ORDERED to file a First Amended Complaint within thirty (30) days of the date of this Order if she still desires to pursue any of the claims being dismissed with leave to amend.

/ / /

/ / /

1

# BACKGROUND

I. **Factual Background**[1]

**A. Melgoza's Allegations of Sexual Harassment**

Plaintiff Jacqueline Melgoza ("Melgoza") was employed by the Department of Homeland Security and Transportation Security Administration at Long Beach Airport. Compl. ¶ 8. Defendant Alejandro Mayorkas ("Defendant") is the Secretary of the United States Department of Homeland Security. *See* Compl.

On September 8, 2017, Melgoza was stationed at a lane, scanning items with the X-ray machine and releasing those items she deemed safe back to passengers. *Id.* ¶ 25. Video footage from Defendant's closed-circuit television was taken of Melgoza at her station and the incident described below. *Id.* at ¶ 26. While working at her station, Melgoza's coworker, Bruce Peterson ("Peterson"), walked up behind her and placed both of his hands on her shoulder and/or neck. *Id.* Melgoza recoiled and jerked her arm away to end the touching, while Peterson's left hand remained on her body. *Id.* She then ducked to the left side into a defensive posture and looked over her right shoulder, to see if Peterson was there, at which point, Peterson left. *Id.*

Shortly afterwards, Melgoza reported the incident to her supervisor. When she returned to work at the checkpoint, Peterson was assigned to work at the lane farthest from Melgoza. *Id.* ¶ 31. However, Melgoza was in shock and uncomfortable that Peterson was still in the checkpoint area and not relocated to the baggage area further away. *Id.* The next day, Peterson was moved to the baggage area until the investigation was resolved. *Id.* ¶ 38. Based on a review of employee statements, the security camera footage, and consultation with Human Resources and legal departments, Melgoza's supervisor informed her that her case was closed. *Id.* ¶ 39. Melgoza became visibly upset upon learning this news, and in response, her supervisor repeatedly advised her to "stay professional" and "move on," brushing off her concerns. *Id.* ¶¶ 40-41.

---

[1] All factual allegations are taken from Plaintiff Jacqueline Melgoza's Complaint unless otherwise noted. ECF No. 1 ("Compl.").

After the meeting with her supervisor, Melgoza reported the incident to the police. *Id.* ¶ 42. Following this report, TSA management issued a No Contact Order and Letter of Counseling to Peterson. *Id.* ¶¶ 44, 49. The letter indicated that it was not a disciplinary action and stated that the incident "did not rise to the level of sexual misconduct" but was considered "unprofessional and failed to show respect and courtesy towards your coworkers." *Id.* ¶ 49. On or about October 16, 2017, Melgoza's supervisor issued a memorandum stating that the investigation into her allegations against Peterson was complete, the No Contact Order was no longer in effect, and the matter was closed. *Id.* ¶ 50.

### B. Melgoza's Equal Employment Opportunity ("EEO") Proceedings

On October 3, 2017, Melgoza first requested EEO counseling arising out of the encounter with Peterson. *Id.* ¶ 53. On October 27, 2017, Defendant informed Melgoza of the conclusion of EEO counseling and provided Melgoza a Notice of Right to File a Formal Complaint of Discrimination. *Id.* ¶ 54. On November 11, 2017, Melgoza filed a formal, administrative complaint of discrimination against Defendant. *Id.* ¶ 55. The formal, administrative complaint of discrimination alleged that Melgoza was discriminated against on the basis of sex (female), race (Hispanic), and color (brown). *Id.*

On March 24, 2018, Melgoza requested a hearing before an EEOC Administrative Judge. *Id.* ¶ 58. Following the administrative hearing on November 21, 2019, the Administrative Judge issued a recommended decision, finding that Peterson had subjected Melgoza to sexual harassment. *Id.* ¶ 59. In the recommended decision, the Judge also recommended that Melgoza receive non-pecuniary compensatory damages in the amount of $17,000.00 for the sexual harassment and retaliation that she suffered by Defendant.[2] *Id.* ¶¶ 59-60. Defendant issued a final order adopting the decision and paid the full $17,000 award to Melgoza on April 30, 2020. ECF No. 16-2, Declaration of Sierra Collins ("Collins Decl.") ¶ 5, Ex. 1.

---

[2] The Judge added retaliation based on the fact that Melgoza's supervisor "repeatedly counseled [Melgoza] to act in a professional manner with Peterson after [Melgoza] reported Peterson's conduct." *Id.* ¶ 59.

1   Melogoza timely appealed TSA's Final Order to the EEOC's Office of Federal Operations
2   ("OFO") requesting an increase of the non-pecuniary compensatory damages to an amount between
3   $30,000 and $100,000. Compl. ¶ 62; Collins Decl., Ex. 2 at 3. On August 15, 2021, the OFO issued
4   its decision affirming the Administrative Judge's finding of discrimination and the award of $17,000
5   in non-pecuniary compensatory damages. *Id.* ¶ 63.
6   / / /
7   / / /

## II. Procedural History

On November 8, 2021, Melgoza filed this action, seeking de novo review of damages only. *Id.* ¶¶ 66–70. On March 8, 2022, Defendant filed a motion seeking to dismiss Melgoza's single claim. ECF No. 16 ("Mot."). The Motion was fully briefed on April 28, 2022. ECF Nos. 19 ("Opp'n"), 24 ("Reply"). The Court heard oral argument on the Motion on May 26, 2022.

## REQUEST FOR JUDICIAL NOTICE

### I. Applicable Law

A court may take judicial notice of facts not subject to reasonable dispute where the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Under this standard, courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

### II. Discussion

Defendant submits—and asks the Court to take judicial notice of—two (2) exhibits in support of its Motion to Dismiss:

1. TSA Compliance Summary reflecting payment to Jacqueline Melgoza on April 30, 2020;
2. EEOC OFO Decision dated August 5, 2021.

Although a district court generally may not consider any material beyond the pleadings in ruling on a motion to dismiss, the court may take judicial notice of matters in the public record. *Lee,*

250 F.3d at 689–90. The Ninth Circuit has recognized public records, including the reports of administrative bodies, as proper subjects for judicial notice. *See, e.g.*, *United States v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2008).

Here, the exhibits submitted by Defendant fall into the category of administrative records that courts have deemed proper for judicial notice. The Court therefore GRANTS Defendant's Request to take judicial notice of Exhibits 1 and 2.

/ / /

## MOTION TO DISMISS

### I. Applicable Law

Under Federal Rule of Civil Procedure Rule 12(b)(6), a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted." The purpose of Rule 12(b)(6) is to "enable defendants to challenge the legal sufficiency of claims asserted in a complaint." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts to support a cognizable legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at 1159; *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("We accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."). This tenet, however, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### II. Discussion

Defendant argues that Melgoza fails to state a claim for relief because she is not entitled to limit this Court's review to the issue of remedy only. Mot. at 6. Rather, Defendant maintains that Melgoza can either accept the OFO decision in its entirety or bring an action seeking de novo review, in which both the issues of damages *and liability* are re-litigated. *Id.*

Under Title VII, upon the conclusion of the administrative process, an employee who prevails on her claim has two avenues in federal court: (1) the employee can bring an *enforcement action* against the agency or (2) if the prevailing employee opts not to seek enforcement, she can file a *de novo* civil action against the agency. *Carver v. Holder*, 606 F.3d 690, 696 (9th Cir. 2010); *see also* U.S.C. § 633a(c) ("Any person aggrieved may bring a de novo civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter."). Here, Melgoza is pursuing the second route by bringing a de novo civil action seeking review of the administrative findings against TSA.

Defendant relies on *Carver v. Holder* to argue that Title VII does not permit an employee to bring a de novo civil action alleging only that an EEOC determination provided inadequate damages without reopening the entire determination to de novo review. Mot. at 6–8. In her Opposition, Melgoza argues that *Carver* is "distinguishable to the instant case because it is an enforcement action." Opp'n at 4.

The Court finds that while *Carver* does not explicitly address the question raised by this case—because the Plaintiff in *Carver* expressly disclaimed that he was seeking de novo review—*Carver* remains highly instructive. The Ninth Circuit explained that despite Plaintiff's proposition that he was seeking an enforcement action, "Carver's only remedy [was] to bring the civil action he denies he is pursuing—a suit for de novo review of his claim. We hold that he cannot parse his action to increase the remedy without relitigating the liability issue in pursuing his claim in federal court." *Carver*, 616 F.3d at 693. Applying the Court's analysis in *Carver* to the instant facts, the Court finds that Melgoza is barred from seeking partial review of the Administrative Judge's decision as it pertains only to damages.

In her Opposition, Melgoza directs the Court to an earlier Ninth Circuit decision, *Girard v. Rubin*, 62 F.3d 1244 (9th Cir. 1995), to establish that the Court should remain flexible enough to allow a plaintiff to appeal parts of an EEOC decision while protecting other parts from review. Opp'n at 5; *see also Girard*, 62 F.3d at 1247. However, the *Carver* court clarified that the holding in *Girard* "is limited to the agency's waiver of a timeliness issue" and in fact, "[n]either party in *Girard* was asking the court to review only part of the EEOC's ruling on the merits." *Carver*, 606 F.3d at

6

697 n.1 (internal citations omitted). Having considered the Ninth Circuit's interpretation of the application of *Girard*, this Court shall not consider *Girard* in its analysis.

Melgoza also relies on *Cosper v. Potter*, No. SACV071074AGANX, 2009 WL 10675182 (C.D. Cal. Feb. 24, 2009) to establish that she may seek de novo review of her damages award only. Opp'n at 4–5. In *Cosper*, the Court permitted *partial* review of certain issues decided in an administrative decision, after acknowledging that it could not restrict an employee's Title VII rights absent clear direction from the Ninth Circuit. *Id.*, 2009 WL 10675182 at * 2. The Ninth Circuit has now addressed the issue of whether a plaintiff may seek to increase an award of damages without relitigating liability—in *Carver*. As such, this Court defers to the more recent decision in *Carver* to guide its analysis.

The Court looks to its sister circuits for further persuasive authority. The Third, Fourth, Fifth, Tenth, Eleventh, and D.C. Circuits have all addressed whether a plaintiff pursuing a de novo civil action is entitled to a review of only the damages award without reviewing the disposition's underlying finding of liability. *Scott v. Johanns*, 409 F.3d 466, 469 (D.C. Cir. 2005) ("May a court review a final administrative disposition's remedial award without reviewing the disposition's underlying finding of liability? According to Title VII's plain language, the answer is no."); *Laber v. Harvey*, 438 F.3d 404, 423–24 (4th Cir. 2006) (same); *Timmons v. White*, 314 F.3d 1229, 1234 (10th Cir. 2003) (same); *Massingill v. Nicholson*, 496 F.3d 382, 385 (5th Cir. 2007) (same); *Morris v. Rumsfeld*, 420 F.3d 287, 294 (3d Cir. 2005); *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005) (same).

In *Scott*, the D.C. Circuit explains that when a plaintiff takes issue with a final administrative disposition—though just a portion of it—her claim arises under 42 U.S.C. § 2000e–16(c), the provision authorizing a cause of action for a party "aggrieved by [a] final disposition." 409 F.3d at 469. Under Section 2000e–16(c), "an employee or applicant for employment ... may file a civil action as provided in section 2000e–5," which contains provisions governing actions against private employers, states, and units of local government. Section 2000e–16(d) further specifies that "[t]he provisions of section 2000e–5(f) through (k) of this title, as applicable, shall govern" Title VII suits against federal agencies. The *Scott* court interpreted this statute to mean that "any remedial order

must rest on judicial findings of liability, and nothing in the statute's language suggests that such findings are unnecessary in cases where a final administrative disposition has already found discrimination and awarded relief." *Id.* This Court agrees with the Third, Fourth, Fifth, Tenth, Eleventh, and D.C. Circuits' interpretation of Section 2000e–16(c). At the May 26, 2022 hearing, when asked by the Court to identify other circuit precedent that disputes the Third, Fourth, Fifth, Tenth, Eleventh and D.C. Circuits' holdings, Melgoza's counsel was unable to do so.

Based upon its review of *Carver* and the persuasive authority in our sister circuits, the Court finds that it must undertake de novo review and issue its own finding as to liability, and may not simply rely on the Administrative Judge, before reevaluating the damages award. For these reasons, the Court finds that Melgoza has failed to state a claim upon which relief may be granted. If she seeks to pursue her claim before this Court, she must seek de novo review of both the liability determination and damages award decided by the EEOC Administrative Judge.

## **CONCLUSION**

For the reasons stated above, the Court GRANTS Defendant's Motion to Dismiss WITH LEAVE TO AMEND and GRANTS Defendant's Request for Judicial Notice. Melgoza is ORDERED to file a First Amended Complaint within thirty (30) days of the date of this Order if she still desires to pursue her claim being dismissed with leave to amend.

**IT IS SO ORDERED.**

Dated: August 15, 2022

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge